IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | |
|---|---|
| TEXDOOR, LLC,<br><br>*Plaintiff,*<br><br>v.<br><br>**JOSEPH SAMFORD, VINTAGE MACHINE TECHNOLOGIES, CORP., and NATIONAL DOOR DISTRIBUTION, LLC,**<br><br>*Defendants.* | CIVIL ACTION NO.<br>3:25-cv-00101-TES |

ORDER DENYING DEFENDANT
JOSEPH SAMFORD'S MOTION TO DISMISS

Before the Court is Defendant Joseph Samford's Motion to Dismiss [Doc. 19] asking the Court to dismiss Plaintiff TexDoor, LLC's Complaint [Doc. 1] on multiple grounds.

BACKGROUND

Plaintiff filed its Complaint on June 17, 2025. The Complaint alleges several claims against Defendant Samford, including breach of contract, violations of the Defend Trade Secrets Act ("DTSA"), the Georgia Trade Secrets Act ("GTSA"), and the Georgia Computer Systems Protections Act ("GCSPA"). *See* [Doc. 1].

Each of these claims originate from Defendant Samford's prior employment with

Plaintiff. Previously, Defendant Samford was employed by Southeast Door Technologies ("SEDT") from 2011 until SEDT was acquired by Plaintiff in August 2023. [*Id.* at ¶ 28]. Plaintiff contends that Defendant Samford was "one of the three key employees integral to SEDT's success" and chose to hire him as TexDoor's operations manager. [*Id.*]. Plaintiff alleges that Defendant Samford's position as operations manager gave him access to confidential and proprietary information, including trade secrets regarding clients' needs and preferences, the specific products sold by TexDoor, and the ways that TexDoor differentiates itself from competitors. [*Id.* at ¶ 29]. When Defendant Samford became officially employed by TexDoor in August 2023, he was required to sign an Employment Agreement. [*Id.* at ¶ 34].

On March 14, 2024, Defendant Samford provided notice of his resignation to TexDoor with his last day of employment to be April 15, 2024. [*Id.* at ¶ 48]. Defendant Samford is now employed by a competitor, co-defendant Vintage Machine Technologies ("VMT"). [*Id.* at ¶ 50]. Plaintiff alleges that Defendant Samford performs virtually the same or similar services that he performed at TexDoor for his new employer, VMT. [*Id.*].

Through a forensic examination, Plaintiff found that Defendant Samford took several documents containing TexDoor's trade secrets and other confidential information before his resignation. [*Id.* at ¶ 69]. Plaintiff goes on to allege that Defendant Samford did so primarily by blind copying his personal email account on

one or more emails to another TexDoor employee. [*Id.* at ¶¶ 70–74]. Some of these documents contained information related to private pricing arrangements with TexDoor's customers. [*Id.*]. TexDoor also alleges that Defendant Samford still possesses USB devices with confidential information and is now using the data stored on those devices in his new role at VMT. [*Id.* at ¶¶ 75–78]. TexDoor points to the fact that Defendant Samford resigned shortly before he would have been entitled to a bonus to support its theory that Defendant Samford intended all along to share the confidential information with his new employer and that doing so would be lucrative enough to justify leaving the bonus money behind. [*Id.* at ¶ 31]. TexDoor posits that the stolen documents give Defendant Samford an advantage in hiring personnel by matching or beating TexDoor's compensation, by aiding VMT in establishing processes to manufacture doors with correct dimensions and would permit VMT to negotiate favorable pricing arrangements with vendors. [*Id.* at ¶ 80].

## **LEGAL STANDARD**

When ruling on a 12(b)(6) motion, district courts must accept the facts set forth in the complaint as true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007). A complaint survives a motion to dismiss only if it alleges sufficient factual matter (accepted as true) that states a claim for relief that is plausible on its face. *McCullough v. Finley*, 907 F.3d 1324, 1333 (11th Cir. 2018) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009)). In fact, a well-pled complaint "may proceed even if it strikes a savvy judge that actual proof of

those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (citations omitted).

Although Federal Rule of Civil Procedure 8 does not require detailed factual allegations, it does require "more than [ ] unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *McCullough*, 907 F.3d at 1333 (citation omitted). To decide whether a complaint survives a motion to dismiss, district courts are instructed to use a two-step framework. *Id.* The first step is to identify the allegations that are "no more than mere conclusions." *Id.* (quoting *Iqbal*, 556 U.S. at 679). "Conclusory allegations are not entitled to the assumption of truth." *Id.* (citation omitted). After disregarding the conclusory allegations, the second step is to "assume any remaining factual allegations are true and determine whether those factual allegations 'plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679).

Furthermore, a complaint attacked by a 12(b)(6) motion is subject to dismissal when it fails to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. "A plaintiff must plead more than labels and conclusions or a formulaic recitation of the elements of a cause of action." *McCullough*, 907 F.3d at 1333 (internal quotations omitted); *see also Twombly*, 550 U.S. at 555. "To be sure, a plaintiff may use legal conclusions to structure his complaint, but legal conclusions 'must be supported by factual allegations.'" *McCullough*, 907 F.3d at 1333 (quoting *Iqbal*, 556 U.S. at 679). While courts, in ruling on a motion to dismiss, must

4

take all factual allegations in the complaint as true; they are not bound to accept a legal conclusion couched as a factual allegation. *Iqbal*, 556 U.S. at 678. Courts must "identify conclusory allegations and then discard them—not 'on the ground that they are unrealistic or nonsensical' but because their conclusory nature 'disentitles them to the presumption of truth.'" *McCullough*, 907 F.3d at 1333 (quoting *Iqbal*, 556 U.S. at 681).

The issue to be decided when considering a motion to dismiss is not whether the claimant will ultimately prevail, but "whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds by Davis v. Scheuer*, 468 U.S. 183 (1984). The factual allegations in a complaint "must be enough to raise a right to relief above the speculative level" and cannot "merely create[] a suspicion of a legally cognizable right of action." *Twombly*, 550 U.S. at 545, 555. Finally, complaints that tender "'naked assertion[s]' devoid of 'further factual enhancement'" will not survive against a motion to dismiss. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (alteration in original). Stated differently, the complaint must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim. *Twombly*, 550 U.S. at 556.

## DISCUSSION

Defendant Samford first argues that there exists a narrow definition of "misappropriation" under the DTSA and GTSA and that accordingly, his actions do not fall under the purview of conduct contemplated under the statutes. [Doc. 19, pp. 4–7].

Essentially, Defendant Samford argues that because he acquired the information at issue in this case during the regular course of his employment at TexDoor, he could not possibly have acquired such information by improper means and thus could not have misappropriated TexDoor's trade secrets and other confidential information. [*Id.* at pp. 5–6].

Under the DTSA, 18 U.S.C. § 1836(b)(1), "(a)n owner of a trade secret that is misappropriated may bring a civil action under this subsection if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." Furthermore, the term "misappropriation," as defined in § 1839(5), may occur when there is either an acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means *or* by disclosure or use of a trade secret of another without express or implied consent by a person. Such person must have, in pertinent part, known or had reason to know that the trade secret was either acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret or from one who derived such trade secrets from a person who owed a duty to maintain the secrecy of the trade secret. 18 U.S.C. § 1839(5)(B).

No one disputes that TexDoor gave Defendant Samford unrestricted access to and use of its alleged trade secrets during his employment. At issue, however, is whether Defendant Samford knew or should have known that he was under a duty to

avoid disclosure or use of a trade secret derived from TexDoor without express or implied consent. Taking the allegations contained in Plaintiff's Complaint as true, the Court finds sufficient evidence to indicate that Defendant Samford could have been aware of the duty imposed under § 1839. The Court bases its decision on the confidentiality covenant contained in the Employment Agreement that Defendant Samford signed as a condition of his employment with TexDoor. [Doc. 1, ¶¶ 19-24]. The Employment Agreement prohibited Defendant Samford from using or disclosing TexDoor's proprietary information, including its trade secrets. [*Id.* at ¶ 37].

To circumvent this conclusion, Defendant Samford appears to argue that the information allegedly taken from TexDoor constantly changes, had no value to TexDoor, and should not be entitled to trade secret protection. [Doc. 19, pp. 4–7]. While it may be true that TexDoor's private pricing arrangements are ever evolving, TexDoor nonetheless asserts in its Complaint that its pricing information is private and confidential and that such information could be used to gain an unfair competitive advantage. [Doc. 1, ¶ 72]. But, whether the information at issue in this case is a trade secret remains a fact question too premature to definitively answer at this early procedural stage so that it is not appropriate for dismissal.

Additionally, Defendant Samford argues that TexDoor has failed to establish the use or disclosure of any such trade secret. [Doc. 19, p. 7]. Specifically, he contends that because TexDoor has thus far not articulated exactly how he or his new employer,

7

VMT, have used the confidential information, the Court should dismiss TexDoor's claims. [*Id.*]. Plaintiff's Complaint, however, does assert that TexDoor has direct evidence of Defendant Samford's theft in the form of proprietary information emailed to a personal email account. [Doc. 1, ¶¶ 69–74]. Again, the Court finds this question not yet ripe for final determination. At this point, no discovery has been conducted on this fact intensive issue. As such, the Court declines to dismiss TexDoor's claims relating to this issue.

Defendant Samford also argues for dismissal because TexDoor failed to provide sufficient facts to demonstrate any injury or harm from Defendant Samford's alleged actions. [Doc. 19, pp. 7–10]. To state a claim for trade secret misappropriation, a plaintiff must show that it had a trade secret and that the opposing party misappropriated the trade secret. *Penalty Kick Mgmt. Ltd. v. Coca Cola Co.*, 318 F.3d 1284, 1290–1291 (11th Cir. 2003). There is no requirement that a plaintiff must allege damages to sustain a claim for misappropriation of trade secrets. As TexDoor has pointed out, both the GTSA and the DTSA authorize injunctive relief and the imposition of a royalty for a defendant's disclosure or use of the trade secret as alternative remedies. [Doc. 23, p. 8]. Plaintiff need not make concrete allegations of monetary damages in its Complaint to sustain a claim under the GTSA and DTSA.

Finally, Defendant Samford asserts that both Plaintiff's breach of contract claim and its claim under the GCSPA are preempted by the DTSA and GTSA. Georgia law

provides that "… [the GTSA] shall supersede conflicting tort, restitutionary, and other laws of this state providing civil remedies for misappropriation of a trade secret." O.C.G.A. § 10-1-767(a). However, subsection (b) of the same statute instructs that the GTSA does not preempt "contractual duties or remedies, whether or not based upon misappropriation of a trade secret" or "other civil remedies that are not based upon misappropriation of a trade secret." *Id.* at 10-1-767(b). It is clear from the plain statutory language that the GTSA allows Plaintiff's claims for breach of contract.

Similarly, the GTSA does not preempt Plaintiff's claim under the GCSPA. It is plausible to conclude from Plaintiff's Complaint that at least some of the information allegedly taken by Defendant Samford is not, in fact a trade secret. Therefore, that information would not be covered by the GTSA and could conceivably fall under the GCSPA. Until additional discovery is conducted, a determination cannot be made as to whether such a claim is subject to dismissal.

Bottom line, it's just too early to throw TexDoor's case against Defendant Samford out. Based on the foregoing, the Court **DENIES** Defendant Samford's Motion to Dismiss [Doc. 19] in full. The case will proceed to discovery.

**SO ORDERED**, this 7th day of October, 2025.

S/ *Tilman E. Self, III*
**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**
